[Cite as *State v. Owens*, 2016-Ohio-3092.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No. L-15-1215

        Appellee                                     Trial Court No. CR0201402847

v.

Sharnell A. Owens                                **DECISION AND JUDGMENT**

        Appellant                                    Decided:  May 20, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
David F. Cooper, Assistant Prosecuting Attorney, for appellee.

Patricia Horner, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Sharnell Owens, appeals the judgment of the Lucas County Court

of Common Pleas denying her motion to suppress and imposing consecutive sentences

for her convictions for aggravated vehicular homicide.  For the reasons that follow, we

affirm.

**{¶ 2}** Appellant sets forth two assignments of error:

I. The trial court erred in denying appellant's motion to suppress[.]

a. The State did not establish that the blood draw was performed within the three hour time limit[.]

b. The State failed to prove that the blood analysis met the requirements of R.C. 4511.19(D)(1)(a)[.]

II. The sentence was excessive[.]

**{¶ 3}** On October 4, 2014, at approximately 11:30 p.m., appellant was operating a vehicle at a high rate of speed while under the influence of alcohol. She was traveling westbound on Front Street in Toledo, Ohio, and the pavement was wet. As appellant traveled into the intersection of Front Street and Steel Street, she rear-ended a vehicle driven by Terry Traver. As a result of the collision, the front of appellant's vehicle went under the bumper of Ms. Traver's vehicle. After Ms. Traver's vehicle separated from appellant's vehicle, Ms. Traver's vehicle traveled into the eastbound lane of Front Street where it was struck on the passenger's side by another vehicle. Ms. Traver and her passenger, Tina Foufos, died due to injuries they sustained as a result of the collisions.

**{¶ 4}** Matthew Sulick, an on-duty officer with the Toledo Police Department ("TPD"), was near the intersection of Front and Steel Streets and observed the accident. Officer Sulick immediately responded and found that appellant was unsteady on her feet, she had red, glassy and bloodshot eyes, slurred and repetitive speech, and smelled strongly of alcohol. Appellant was very uncooperative and refused to take a field

2.

sobriety test or a breathalyzer test. Appellant was taken into custody at the scene of the accident and transported to the Safety Building.

{¶ 5} Another TPD officer, Jeffrey Scott, arrived at and investigated the scene of the accident. Thereafter, Officer Scott went to the Safety Building and prepared an affidavit for a search warrant to draw appellant's blood. After obtaining a judge's signature on the search warrant, Officer Scott had appellant transported to a nearby hospital. A registered nurse drew appellant's blood at approximately 5:30 a.m., and it was determined that appellant's blood-alcohol level was .21.

{¶ 6} On November 20, 2014, appellant was indicted on two counts of aggravated vehicular homicide, second degree felonies, in violation of R.C. 2903.06(A)(1)(a) and (B), and one count of operating a vehicle under the influence of alcohol ("OVI"), a first degree misdemeanor, in violation of R.C. 4511.19(A)(1)(a). Appellant pled not guilty.

{¶ 7} On January 21, 2015, appellant filed a motion to suppress claiming the proper procedures for obtaining and testing her blood for alcohol were not followed. Appellant argued the proper procedure for drawing and testing blood is set forth in Ohio Adm.Code 3701-53-01 through 3701-53-09, and the state did not substantially comply with these regulations. In addition, appellant asserted the blood sample was not taken within the three hour time limit set forth in R.C. 4511.19(D)(1)(b).

{¶ 8} A suppression hearing was held. Testimony and evidence were offered and the parties stipulated to the admission of the affidavit of Dr. Robert Forney, Chief

3.

Forensic Toxicologist and Director of Toxicology at the Lucas County Coroner's office. The motion to suppress was denied.

{¶ 9} On June 29, 2015, appellant changed her plea to no contest as to all three counts of the indictment, and was found guilty. On July 14, 2015, appellant was sentenced to eight years in prison on each aggravated vehicular homicide conviction, to be served consecutively, and 180 days in jail on the OVI conviction. The OVI sentence was ordered to be served concurrently with the aggravated vehicular homicide convictions. Appellant was also ordered to pay a fine and restitution, and her driver's license was suspended for life. This appeal followed.

{¶ 10} In her first assignment of error, appellant argues her motion to suppress should have been granted for several reasons. First, there was a lack of substantial compliance with R.C. 4511.19(D)(1)(b) by the state as her blood was not drawn within the three hour time limit. Next, appellant contends the state failed to prove the blood analysis met the requirements of R.C. 4511.19(D)(1)(a), as the blood was not taken and analyzed at a "health care provider," as defined in R.C. 2317.02. Appellant cites to *State v. Oliver*, 9th Dist. Summit No. 25162, 2010-Ohio-6306, in support of her position. Last, appellant maintains she was prejudiced by the trial court's denial of her motion because if the test results would not have been admissible, a different scenario would have resulted for both the state and her.

{¶ 11} In *Oliver*, the defendant was involved in an automobile accident and was taken to the hospital where a nurse drew his blood. *Id.* at ¶ 2, 8. The nurse used

4.

ChloraPrep as an antiseptic on defendant's skin, which is 70 percent isopropyl alcohol. *Id.* at ¶ 8. Defendant was charged with numerous crimes including aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1) and (2), and OVI, in violation of R.C. 4511.19(A)(1)(a) and (f). *Id.* at ¶ 2. Defendant filed a motion to suppress any blood-alcohol test results. *Id.* at ¶ 3. A hearing was held and the trial court granted the motion to suppress. *Id.* On appeal, the state argued although it was undisputed that there was not substantial compliance with Ohio Adm.Code 3701-53-05 (which requires no alcohols be used as a skin antiseptic), the trial court still had discretion to admit the results pursuant to R.C. 4511.19(D)(1)(a). *Id.* at ¶ 14, 15. However, the trial court had found R.C. 4511.19(D)(1)(a) was inapplicable because the state did not present evidence that the blood was analyzed at a "health care provider," as "the blood was drawn by a nurse, but analyzed at a law enforcement laboratory." *Id.* at ¶ 16. The appellate court affirmed the trial court's judgment granting the motion to suppress. *Id.*

{¶ 12} The state counters appellant's reliance on *Oliver* is misplaced since the blood testing in that case was not admissible under either R.C. 4511.19(D)(1)(a) or 4511.19(D)(1)(b), while here, the state demonstrated the blood testing was admissible under R.C. 4511.19(D)(1)(b). In addition, although the state concedes appellant's blood was not drawn within three hours of the alleged violation, since appellant was charged with OVI under R.C. 4511.19(A)(1)(a), which is considered "impaired driving." rather

5.

than a "per se" prohibited alcohol level violation,[1] evidence of the results of the test outside of the three hour limit is admissible, so long as the state demonstrates substantial compliance with the department of health regulations. In support of this argument, the state relies on *State v. Hassler*, 115 Ohio St.3d 322, 2007-Ohio-4947, 875 N.E.2d 46. The state further argues it demonstrated there was strict compliance with department of health regulations with respect to the analysis of appellant's blood. However, if only substantial compliance is found, the state maintains appellant has not shown she was prejudiced since she did not show the failure of the blood testing to be administered in strict compliance with the regulations caused the testing to be inaccurate or unreliable.

## Standard of Review

{¶ 13} Appellate review of a motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When the trial court decides a motion to suppress, it assumes the role of trier of fact and is in the best position to resolve questions of fact and to assess witness credibility. *Id.* A reviewing court is bound to accept the trial court's findings of fact if those findings are supported by competent, credible evidence. *Id.* An appellate court must then independently decide as a matter of law whether the trial court's conclusions satisfy the appropriate legal standard. *Id.*

---

[1]With a per se offense, the result of a blood-alcohol test is an element of the offense. *City of Newark v. Lucas*, 40 Ohio St.3d 100, 103, 532 N.E.2d 130 (1988).

6.

**Law**

{¶ 14} R.C. 4511.19(A)(1)(a) states "[n]o person shall operate any vehicle * * * within this state, if, at the time of the operation * * * [t]he person is under the influence of alcohol * * *."

{¶ 15} The threshold criteria for the admissibility of alcohol test results in prosecutions for OVI is set forth in R.C. 4511.19(D). R.C. 4511.19(D)(1) provides:

(a) In any criminal prosecution * * * for a violation of division (A)(1)(a) of this section or for an equivalent offense that is vehicle-related, the result of any test of any blood * * * withdrawn and analyzed at any health care provider, as defined in section 2317.02 of the Revised Code, may be admitted with expert testimony to be considered with any other relevant and competent evidence in determining the guilt or innocence of the defendant.

(b) In any criminal prosecution * * * for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court may admit evidence on the concentration of alcohol * * * in the defendant's whole blood, blood serum or plasma, * * * at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation. * * * The court may admit evidence on the concentration of alcohol * * * as described in this division when * * * a blood * * * sample is obtained pursuant to a search

warrant. * * * The bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code.

{¶ 16} R.C. 3701.143 requires the director of health to "determine, or cause to be determined, techniques or methods for chemically analyzing a person's blood." The director must then "approve satisfactory techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses." Pursuant to this statutory mandate, the department of health promulgated regulations which are set forth in Ohio Adm.Code 3701-53-01 et seq.

{¶ 17} When a defendant challenges the validity of an alcohol test, the state has the burden of establishing the testing procedures substantially complied with the department of health regulations. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 24. The substantial compliance standard is limited "to excusing only errors that are clearly de minimis," which include irregularities amounting to "'minor procedural deviations.'" *Id.* at ¶ 34, quoting *State v. Homan*, 89 Ohio St.3d 421, 426, 732 N.E.2d 952 (2000), *superseded by statute on other grounds*. After the state has shown substantial compliance with the regulations, the test result is presumptively admissible and the burden then shifts to the defendant to show prejudice resulting from "anything less than strict compliance." *Burnside* at ¶ 24.

8.

**{¶ 18}** In *State v. Hassler*, 115 Ohio St.3d 322, 2007-Ohio-4947, 875 N.E.2d 46, ¶ 11, the Ohio Supreme Court found that in prosecutions for OVI under R.C. 4511.19(A)(1)(a), "'the behavior of the defendant * * * is the crucial issue. The accuracy of the test is not the critical issue as it is in prosecutions for per se violations.' *[City of Newark v.] Lucas*, 40 Ohio St.3d [100] at 104, 532 N.E.2d 130 [(1988)]." Therefore, the test "'results [were] not dispositive to a determination of innocence or guilt * * *, the fact that a bodily substance is withdrawn more than two hours after the time of the alleged violation does not, by itself, diminish the probative value of the test results in an R.C. 4511.19(A)(1) prosecution.' *Id.*" *Id.* Blood drawn outside of the time frame set forth in R.C. 4511.19(D) is admissible to prove a person is under the influence of alcohol, as proscribed by R.C. 4511.19(A)(1)(a), in prosecuting a violation of R.C. 2903.06, "provided that the administrative requirements of R.C. 4511.19(D) are substantially complied with and expert testimony is offered." *Id.* at ¶ 19.

### Evidence and Analysis

**{¶ 19}** Appellant argued in her motion to suppress and at the hearing that the procedures used in obtaining, handling and testing her blood sample were not conducted pursuant to the department of health regulations codified in the Ohio Administrative Code, and the sample was not obtained in accordance with R.C. 4511.19(D)(1)(b).

**{¶ 20}** At the suppression hearing, several witnesses testified for the state. Officer Sulick testified he is a TPD officer and was on duty October 4, 2014 when he responded

9.

to the accident involving appellant. The officer testified about his interaction with appellant, whom he described as showing signs of intoxication.

{¶ 21} TPD Officer Scott testified he investigated the accident involving appellant and ultimately drafted an affidavit and search warrant for appellant's blood for analysis. He testified he had the search warrant signed by a judge and then went to the hospital where appellant's blood was drawn. Officer Scott also testified at length regarding the blood kits the Lucas County Coroner's Office supplies to TPD which are used to collect the blood of individuals suspected of OVI.

{¶ 22} Laura Montri testified she is a registered nurse and was working at St. Vincent Hospital Emergency Department in the early morning hours of October 5, 2014. Ms. Montri stated she withdrew a blood sample from appellant using a kit supplied by TPD, and handed the specimen containers with the blood to TPD.

{¶ 23} TPD Sergeant Edward Mack testified he oversees the property room which contains all of the evidence for safekeeping. Sergeant Mack stated bodily fluids are stored in the property room refrigerator, which is kept at around 42 degrees. Sergeant Mack further testified vials of appellant's blood, received from Officers Sulick and Yarnell, were booked into a locked container in the property room refrigerator on October 5, 2014.

{¶ 24} TPD Officer Curtis Stone testified he works in the property room and transported appellant's blood kit to the toxicology laboratory at the coroner's office.

10.

{¶ 25} The state also submitted exhibits in further support of the witnesses' testimony. In addition, the state offered the affidavit of Dr. Robert Forney. Dr. Forney stated appellant's blood sample was properly sealed and labeled, and was refrigerated when not under examination pursuant to Ohio Adm.Code 3701-53-05. The doctor affirmed the chain of custody and test results on appellant's sample, and verified the written standard operating procedure manual will be retained for at least three years. Dr. Forney also stated the laboratory personnel, who he monitored, are adequately trained and experienced in accordance with Ohio Adm.Code 3701-53-06. The doctor further affirmed that he and the laboratory technicians have the proper qualifications and permits as required by Ohio Adm.Code 3701-53-07.

{¶ 26} The trial court then found substantial compliance with the blood draw itself, although appellant's blood was drawn after the three hour time frame.

{¶ 27} A review of the record shows the state presented the testimony of numerous witnesses as well as an expert witness to establish its compliance with the regulations for obtaining, handling and testing appellant's blood sample. The state demonstrated the test results on appellant's blood sample were admissible pursuant to R.C. 4511.19(D)(1)(b). Therefore, the state did not have to prove it complied with R.C. 4511.19(D)(1)(a). Since appellant was charged with and convicted of OVI, in violation of R.C. 4511.19(A)(1)(a), which is considered "impaired driving," the state offered testimony as to why it did not comply with the three hour time limit for drawing blood, found in R.C. 4511.19(D)(1)(b). We find the state's failure to meet this requirement is

11.

de minimis, considering its compliance with all of the other requirements. Accordingly, we conclude the state substantially complied with procedures for collecting, handling and testing appellant's blood sample.

{¶ 28} As the state demonstrated substantial compliance with the regulations, the test results were presumptively admissible, so the burden shifted to appellant to show she was prejudiced by the state's less than strict compliance. Appellant failed to sustain this burden as she offered no evidence that she was adversely affected by her blood being drawn more than three hours after the accident. Therefore, the trial court did not abuse its discretion in denying appellant's motion to suppress. Appellant's first assignment of error is not well-taken.

{¶ 29} In her second assignment of error, appellant asserts her 16-year prison sentence is excessive since she had never before served a prison sentence, she was remorseful and she accepted full responsibility for her conduct. She further argues ordering her to serve the maximum amount of time permissible is contrary to law.

**Standard of Review**

{¶ 30} The standard of appellate review of felony sentences is set forth in R.C. 2953.08. This court outlined that standard of review in *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 11:

> R.C. 2953.08(G)(2) establishes that an appellate court may increase, reduce, modify, or vacate and remand a dispute[d] sentence if it clearly and convincingly finds either of the following:

12.

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13(B) or (D), division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law. *Id.* at ¶ 11, quoting R.C. 2953.08(G)(2).

**{¶ 31}** With respect to consecutive sentences, the Supreme Court of Ohio held:

In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.

**{¶ 32}** R.C. 2929.14(C)(4) states:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

* * *

13.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**Analysis**

{¶ 33} A review of the record shows the trial court, at appellant's sentencing hearing, considered evidence such as the presentencing investigation report, appellant's criminal history, the victim impact statements, and appellant's statement. In addition, the court discussed some of the events surrounding the accident, which included appellant speeding at almost twice the posted speed limit just prior to the collision and having a blood-alcohol level of almost three times the legal limit when her blood was drawn. The trial court also considered the statutory factors when it ordered appellant to serve maximum, consecutive sentences, including the purposes and principles of felony sentencing, in accordance with R.C. 2929.11, and the seriousness and recidivism factors found in R.C. 2929.12. The trial court found the shortest prison term would demean the seriousness of the offense and would not adequately protect the public. The trial court further determined consecutive sentences were necessary to protect the public from future

14.

crime and to punish appellant, and consecutive sentences were not disproportionate to the seriousness of appellant's conduct or the danger she poses.

{¶ 34} We find the trial court's sentence was not excessive, nor was it contrary to law. The sentence was authorized by law as the prison term for a felony of the second degree "shall be two, three, four, five, six, seven, or eight years." R.C. 2929.14(A)(2). In addition, we conclude the trial court had the authority to give appellant consecutive sentences, as the court made the required statutory findings. We further conclude the evidence in the record supports the trial court's findings under R.C. 2929.14(C)(4). Accordingly, appellant's second assignment of error is not well-taken.

{¶ 35} The judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.
_____
JUDGE

Arlene Singer, J.

_____
James D. Jensen, P.J.                                    JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.